# EXHIBIT 2

# EXHIBIT 2

Electronically Filed
06/15/2015 10:03:19 PM

CLERK OF THE COURT

JAMES P. KEMP, ESQ.
Nevada Bar No.: 6375
VICTORIA L. NEAL, ESQ.
Nevada Bar No.: 13382
KEMP & KEMP
7435 W. Azure Drive, Ste 110
Las Vegas, NV 89130
702-258-1183 ph./702-258-6983 fax
jp@kemp-attorneys.com
vneal@kemp-attorneys.com

*Attorneys for Plaintiff*

## DISTRICT COURT

## CLARK COUNTY, NEVADA
***

| | |
|---|---|
| KELLY M. STARK, | Case No.: A-15-719948-C |
| Plaintiff, | Dept No.: XXVIII |
| vs. | |
| GNLV CORP., a Domestic Corporation, D/B/A/ GOLDEN NUGGET LAS VEGAS, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |
| | Arbitration Exemption: action seeking equitable or extraordinary relief. |

COMES NOW Plaintiff, KELLY M. STARK, by and through Counsel of Record, KEMP & KEMP, ATTORNEYS AT LAW, and for a cause of action does hereby state and allege as follows:

### JURISDICTION

1. This is a civil action for damages brought by KELLY M. STARK against her former employer, GNLV CORP. to redress discrimination and retaliation under Title VII of the 1964 Civil Rights Act, as amended by the 1991 Civil Rights Act, 42 U.S.C §12101 *et seq.*, the Americans With Disabilities Act of 1993 (herein "ADA"), as those Acts have been amended from time to

time. KELLY M. STARK brings additional claims for retaliation and interference by her former employer, GNLV CORP., in violation of the Family and Medical Leave Act of 1993 (herein "FMLA"), as amended, 29 U.S.C. § 2601 *et seq.*

2. KELLY M. STARK was issued a Notice of Right to Sue by the United States Equal Employment Opportunity Commission on March 19, 2015.

3. KELLY M. STARK has fully complied with all prerequisites under Title VII, the ADA and the FMLA to pursue these claims in this Court.

4. This action has been timely filed as to all claims.

## PARTIES

5. KELLY M. STARK (herein "Plaintiff"), is a resident of Clark County, Nevada.

6. GNLV CORP., D/B/A/ GOLDEN NUGGET LAS VEGAS (herein "Defendant"), is a domestic corporation registered with the Nevada Secretary of State.

7. Defendant has continuous and ongoing business operations in the state of Nevada and Clark County, and engages in an industry affecting commerce. Upon information and belief, Defendant employed more than 500 employees in the two calendar years preceding the events in question. Defendant's principal place of business is located in Las Vegas, NV.

8. Defendant, as a corporation, can only operate by and through its agents, directors, officers, managers, supervisors, and employees. Therefore, wherever the identifying word Defendant is used, it encompasses actions by and through its agents, directors, officers, managers, supervisors, and employees.

9. Plaintiff is unaware of the true names and capacities whether individuals, corporations, associates, or otherwise of Defendants DOE INDIVIDUALS I through X and ROE BUSINESS ENTITIES I through X, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that the

Defendants, and each of them, are in some manner responsible and liable for the acts and damages alleged in this Complaint. Plaintiff will seek leave of this Court to amend this Complaint to allege the true names and capacities of the DOE INDIVIDUAL and ROE CORPORATION Defendants when the true names of the DOE INDIVIDUAL and ROE CORPORATION Defendants are ascertained.

### ALLEGATIONS COMMON TO ALL CLAIMS

10. Plaintiff was hired by Defendant as a Table Games Dealer on October 15, 1998. At all times herein, Plaintiff performed at or above the reasonable expectations of Defendant to include earning a position as a blackjack dealer in Defendant's "high limit" gaming pit - a position reserved for only the best dealers. On June 7, 2013, Plaintiff's termination was effectuated after she experienced a medical episode directly linked to her disability while on duty on May 24, 2013.

11. In approximately 2011, Plaintiff was diagnosed with hyperthyroidism. By way of background, the thyroid gland regulates every aspect of a person's metabolism thereby dictating the actions and reactions of *every* organ and system within the human body. This is done through the production of a hormone produced exclusively by the thyroid. Left undiagnosed, misdiagnosed or mistreated, hyperthyroidism can lead to permanent damage to any one of the body's organs and systems, and to death.

12. The treatments for hyperthyroidism include radioactive iodine therapy (herein "RAI"), aimed at disabling or killing the gland completely, or surgery to remove the gland. Either procedure leads to a decreased or totally non-functioning gland. After those procedures, approximately 90% of patients are diagnosed as having hypothyroidism. Hypothyroidism is a chronic insidious disease that can be managed by daily medication, but which does not preclude unannounced episodic reoccurrences of symptoms affecting the quality of the

3

patient's life. Symptoms of hypothyroidism include, but are not limited to, neuronal excitability, body temperature control (getting excessively hot or cold), sensory impairments, exaggerated sensitivities to smells and tastes, slowness of thought and action, changes of speech, headaches, sleep disturbances, confusion up to delusions and hallucinations, impairments of memory and mental acuity ("brain fog"), of vision, as well as of hearing. Further, the psychiatric disturbances which accompany hyperthyroidism and hypothyroidism mimic mental illness. Patients may exhibit paranoia-like fear, marked anxiety and tension, emotional lability, impatience and irritability, and distractible over-activity.

13. Under the ADA, thyroid gland disorders are a covered disability.

14. Plaintiff sought treatment for her hyperthyroidism undergoing two (2) rounds of RAI therapy. When the RAI therapy failed to correct the hyperthyroidism Plaintiff underwent surgery to have the gland completely removed. Having no thyroid gland caused Plaintiff be diagnosed with hypothyroidism and she was prescribed a thyroid replacement hormone as a measure to control her hypothyroidism. As with any hormone replacement therapy, it is often trial by error and usually requires an expansive amount of time, often years, to ascertain the correct replacement therapy and dosage needed to regulate and manage the thyroid gland disorder. Additionally, replacement therapy requires regular testing to insure that the therapy is achieving optimum results and control of the symptoms. Even with astute and diligent monitoring, patients can experience the reoccurrence of symptoms. This is exactly what happened to Plaintiff.

15. Plaintiff's thyroid surgery occurred on July 19, 2012. She applied for and was granted leave under the FMLA effective as of July 19, 2012, specifically because of her thyroid gland disorder. Plaintiff returned to full-duty on August 2, 2012.

-4-

16. On January 14, 2013, Plaintiff's doctor wrote a note which stated that Plaintiff was being seen by him "for adrenal fatigue, hypothyroidism, hormone insufficiency, and insomnia." The doctor further stated the he hoped the "letter will serve to document the patient's medical diagnosis...".

17. On May 24, 2013, Plaintiff would experience a severe reoccurrence of her hypothyroid symptoms. On that day, Plaintiff had two "regular" players at her "high limit" table, a mother and son. Plaintiff had known both the mother and son since 1998 and had developed a friendly rapport with each. Because of their longstanding relationship, it was not unusual for Plaintiff and the mother and son to joke, exchange stories about their lives, and generally enjoy each other's company with engaging in gaming activities. On this particular occasion, Plaintiff was taken aback by the amount or perfume the mother was wearing – a perfume the customer had worn many times before and which had not affected Plaintiff. However, on this occasion, the customer's perfume was overwhelming and even though it was beginning to bother her, Plaintiff joked with the players about it. Nonetheless, within a short period of time, the overwhelming perfume odor triggered a strong chain reaction of physical and mental symptoms within Plaintiff. The reaction to the perfume, and the resulting physical and mental symptoms, are directly related and attributed to Plaintiff's thyroid gland disability.

18. First, Plaintiff's body reacted to the strong perfume odor by getting hot leading to her to panic and to an overwhelming feeling of anxiety. She backed away from the table to catch a breath and to try and stabilize the symptoms. She would return to the table, but the chain reaction continued.

19. Plaintiff's anxiety grew as the situation became more unmanageable for her. The stress of the situation triggered Plaintiff's cognitive reasoning and functioning capabilities to be compromised. This condition is sometimes referred to as "brain fog" wherein the stress of a

situation can cause the brain's neurotransmitters to misfire. "Brain fog" is a common symptom of hypothyroidism. Plaintiff was not able to "configure her thoughts" and became "confused," and, as a result, has trouble recalling portions of the events or is "foggy" in her recollection.

20. Jovalyn Del Rosaio (herein "Del Rosario"), Plaintiff's immediate supervisor during that shift, noticed the incident and moved Plaintiff to another gaming table; however, the table was still in the immediate vicinity of the odor. By this time, Plaintiff's body was in full attack mode – attacking itself. Plaintiff felt cornered and her body's natural "fight or flight" instinct kicked in. In one form or another, Plaintiff repeatedly relayed to Defendant that she could not handle the perfume odor, that it was choking her.

21. Bryan Daigneault (herein "Daigneault") was notified of the situation by Del Rosario and approached Plaintiff to asked if she needed to be removed from the pit. Plaintiff replied "yes." After being removed, Plaintiff, still in a state of hyper-vigilance, tried to explain to Daigneault her thyroid condition and the effects of the perfume on her.

22. After Plaintiff was removed from the situation and allowed to take a break, she was able to calm her body's reactions enough to finish her shift, but not enough to feel completely "recovered" from the stress of the situation on her body and mind.

23. Even before Defendant was notified by Plaintiff of her disability, in the form of her thyroid gland disorder on the day of the incident, Defendant was aware of Plaintiff's disability. Defendant had approved Plaintiff's leave under the FMLA and knew she had had surgery to remove her thyroid. In addition, Plaintiff's shift boss, Judy Watson (herein "Watson"), who was present the day of the incident, had referred Plaintiff to her endocrinologist, who was also treating Watson for a similar condition. Finally, Defendant was provided a letter from Plaintiff's doctor, dated January 14, 2013, explaining Plaintiff medical disabilities. These facts

are more than enough to have been considered a request for an accommodation under the ADA.

24. Plaintiff was suspended pending investigation on May 26, 2013. On May 29, 2013, Defendant held a due process meeting wherein Plaintiff repeatedly explained the chain of events, explained her thyroid gland disorder again, explained the effects of the disease again, and explained how during the incident she had become overheated, confused, and filled with anxiety. This is more than enough to be considered a request for an accommodation under the ADA.

25. Plaintiff was a model and valued employee for 15 years who had never received discipline for behavior even remotely like that described above. Defendant knew this behavior to be out of character for Plaintiff yet, despite having complete knowledge of Plaintiff's disability and instead of addressing her need for an accommodation under the ADA, Defendant chose to terminate her.

26. Plaintiff also had leave available under the FMLA, but Defendant, even though knowing this to be true, did not suggest to Plaintiff that she leave the floor and/or take time off to ascertain what had caused her reaction to the perfume and/or to seek medical attention. Instead, Del Rosario immediately placed Plaintiff back in service only moving her a short distance from the odor, but still well within Plaintiff's olfactory range. Del Rosario would be terminated for not handling the situation properly.

27. Immediately after the incident Plaintiff was visibly confused, anxious, demonstrating reduced cognitive functioning, and acting completely out of character. Defendant should have suggested Plaintiff exercise her right to leave under the FMLA, as Plaintiff was not in any condition to request leave on her own behalf at that time.

...

7

### FIRST CAUSE OF ACTION:
### DISCRIMINATION AND RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990,
### 42 U.S.C. § 12101 *ET SEQ.*

28. Plaintiff repeats and re-alleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, as if set forth fully herein.

29. As fully detailed herein, Plaintiff is a person with a disability pursuant the Americans with Disabilities Act of 1990, as amended in January 2009.

30. As fully detailed herein, Plaintiff was qualified for her job and capable of performing the essential functions of the job with or without a reasonable accommodation.

31. As fully detailed herein, Plaintiff was regarded as being disabled by Defendant.

32. As fully detailed herein, Plaintiff's disability was the sole or motivating factor in Defendant's decision to terminate Plaintiff's employment.

33. As fully detailed herein, Plaintiff was denied a reasonable accommodation and Defendant failed to engage, in good faith, in an interactive process to develop a reasonable accommodation for Plaintiff. Such reasonable accommodation would have allowed Plaintiff to perform the essential functions of her job and would not have been an undue hardship on Defendant.

34. As fully detailed herein, Plaintiff posed no direct threat to the health and safety of others in the workplace.

35. As fully detailed herein, Defendant's acts constituted discrimination against Plaintiff with respect to her compensation, terms, conditions, or privileges of employment in violation of the Americans with Disabilities Act as amended effective January 2009.

36. Defendant's acts constituted retaliation against Plaintiff with respect to her compensation, terms, conditions, or privileges of employment in violation of the Americans with Disabilities Act, as amended.

37. As fully detailed herein, the actions of Defendant would have the effect of discouraging other persons with a disability from pursuing their rights under the Act.

38. Plaintiff suffered emotional distress, humiliation, and mental anguish.

39. Plaintiff suffered damages.

40. Plaintiff should be awarded punitive damages against Defendant to make an example of Defendant and to deter future conduct of this nature.

41. As a result of Defendant's actions, Plaintiff has been required to hire an attorney and expend fees and costs to pursue and protect her legal rights through this action and is, therefore, entitled to recover her reasonable attorney fees and costs in an amount to be determined.

## SECOND CAUSE OF ACTION:
## INTERFERENCE WITH PLAINTIFF'S RIGHTS IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

42. Plaintiff repeats and re-alleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, as if set forth fully herein.

43. Defendant is liable to Plaintiff for violating her rights under the FMLA.

44. Defendant operates in interstate commerce and has over 50 employees within a 75 mile radius of the location where Plaintiff was employed in Clark County, Nevada. Therefore, Defendant is a "covered employer," as defined at 29 U.S.C. § 2611(4), under the Family and Medical Leave Act 29 U.S.C. §§ 2611-2654 and subject to all provisions stated therein.

45. As a "covered employer" under the FMLA, Defendant is required to offer any "eligible employee," as defined at 29 U.S.C. § 2611(2), up to 12 weeks of leave for of absence "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

46. As fully detailed herein, Plaintiff was an "eligible employee," entitled to the protections of the FMLA having worked for Defendants over 1250 hours during the preceding 12 months.

47. As fully detailed herein, Plaintiff was qualified to obtain FMLA in that she had a serious health condition.

48. As fully detailed herein, Plaintiff provided Defendant notice of her need for time off sufficient notice to trigger its responsibility to provide leave under the FMLA.

49. As fully detailed herein, Defendant denied Plaintiff FMLA benefits or interfered with FMLA rights to which she was entitled.

50. Defendant's violation of the FMLA was willful and without justification.

51. Defendant's acts were done with malice and oppression and with Defendant's conscious disregard for the rights of Plaintiff and with a certainty of knowledge that Plaintiff would be injured by Defendant's acts in violation of the FMLA.

52. Plaintiff is entitled to all remedies available under the FMLA and hereby claims entitlement to all appropriate remedies pursuant to 29 U.S.C. § 2617 (a)(1)(A) and (B) including, but not limited to, the following: money damages for lost wages and benefits and any other actual money damages caused by Defendants's violation of the FMLA; liquidated damages as provided for under the FMLA; interest as provided for under the FMLA and other law; equitable and/or injunctive relief including employment, reinstatement, and/or promotion as provided for by the FMLA and/or front pay in lieu of employment or reinstatement.

53. Plaintiff is entitled to recover reasonable attorneys' fees pursuant to 29 U.S.C. § 2617(a)(3) for having to incur costs associated with the exercise of her legal rights and remedies through this action.

### THIRD CAUSE OF ACTION:
### RETALIATION AGAINST PLAINTIFF
### IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

54. Plaintiff repeats and re-alleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, as if set forth fully herein.

55. Defendant is liable to Plaintiff for violating her rights under the FMLA.

56. Defendant operates in interstate commerce and have over 50 employees within a 75 mile radius of the location where Plaintiff was employed in Clark County, Nevada. Therefore, Defendant is a "covered employer," as defined at 29 U.S.C. § 2611(4), under the Family and Medical Leave Act 29 U.S.C. §§ 2611-2654 and subject to all provisions stated therein.

57. As a "covered employer" under the FMLA, Defendant is required to offer any "eligible employee," as defined at 29 U.S.C. § 2611(2), up to 12 weeks of leave for of absence "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

58. As fully detailed herein, Plaintiff was an "eligible employee," entitled to the protections of the FMLA having worked for Defendant over 1250 hours during the preceding 12 months.

59. As fully detailed herein, Plaintiff was qualified to obtain FMLA in that she had a serious health condition.

60. As fully detailed herein, Plaintiff provided sufficient notice of her need to take leave under the FMLA.

61. As fully detailed herein, in retaliation for Plaintiff's attempt to exercise her rights under the FMLA, Defendant terminated Plaintiff so it could avoid its obligations and in doing so discriminated against Plaintiff and her statutory rights under the Act.

62. There was a causal link between Plaintiff's protected activity and Defendant's adverse employment action of terminating Plaintiff's employment.

63. Defendant's violation of the FMLA was willful and without justification.

64. Defendant's acts were done with malice and oppression and with Defendant's conscious disregard for the rights of Plaintiff and with a certainty of knowledge that Plaintiff would be injured by Defendant's acts in violation of the FMLA.

65. Plaintiff is entitled to all remedies available under the FMLA and hereby claims entitlement to all appropriate remedies pursuant to 29 U.S.C. § 2617 (a)(1)(A) and (B) including, but not limited to, the following: money damages for lost wages and benefits and any other actual money damages caused by Defendant's violation of the FMLA; liquidated damages as provided for under the FMLA; interest as provided for under the FMLA and other law; equitable and/or injunctive relief including employment, reinstatement, and/or promotion as provided for by the FMLA and/or front pay in lieu of employment or reinstatement.

66. Plaintiff is entitled to recover reasonable attorneys' fees pursuant to 29 U.S.C. § 2617(a)(3) for having to incur costs associated with the exercise of her legal rights and remedies through this action.

WHEREFORE, Plaintiff expressly reserves the right to amend her Complaint at or before the time of trial of the action herein to include all items of damages not yet ascertained, and demands judgment against Defendant as follows:

A. All applicable monetary relief provided for under Federal law, common law and Nevada state law including, but not limited, to the following:

　　1. Money damages in excess of $10,000.00;

　　2. Economic damages including, but not limited to, lost wages and benefits of employment, incidental and consequential damages;

　　3. Liquidated damages under the Family Medical Leave Act, 29 U.S.C. § 2617 (a)(1)(A) and (B);

　　4. General damages including emotional distress and general economic harm;

　　5. Equitable and extraordinary relief in the form of an order of reinstatement, or in the alternative front pay in lieu of reinstatement;

12

6. Punitive and/or Exemplary damages to deter Defendant from future willful, malicious, fraudulent, and oppressive conduct of a similar nature;

7. Pre-judgment and post-judgment interest on the amounts awarded at the prevailing legal rate;

8. For an additional amount to account for any taxes Plaintiff may be called upon to pay in relation to any award made herein;

9. Reasonable attorney fees, reasonable expert witness fees, and other costs of the action pursuant to federal and state statute, agreement, or court rule;

B. A trial by jury on all issues that may be tried to a jury; and/or

C. For such other and further relief as the Court may deem just and proper.

DATED this __15th__ of June, 2015.

                                           /s/ James P. Kemp
                                   JAMES P. KEMP, ESQ.
                                   Nevada Bar No.: 6375
                                   VICTORIA L. NEAL, ESQ.
                                   Nevada Bar No.: 13382
                                   KEMP & KEMP
                                   7435 W. Azure Drive, Ste 110
                                   Las Vegas, NV  89130
                                   702-258-1183 ph./702-258-6983 fax

                                   *Attorneys for Plaintiff*

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 • Fax (702) 258-6983